IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MELVIN WAYNE MURRAY | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-10-153 (Consolidated Case: RDB-10-155) |
| JUAN C. DE LA TORRE, M.D., et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending are Defendants Juan De La Torre, M.D., and Vincent C. Siracusano, M.D.'s Motion to Dismiss or for Summary Judgment. ECF No. 46. Plaintiff has not filed a response.[1] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, said motion is GRANTED.

### Background

Plaintiff, a former state inmate, claims he received inadequate medical care during his incarceration. Plaintiff states that on June 6, 2007, Dr. De La Torre was aware of the side effects Plaintiff was suffering as a result of prescribed medication. Dr. De La Torre indicated in his orders that Plaintiff would be seen for a follow up visit but was not seen again until May 19, 2008. ECF No. 1. His medical notes reflect he was "lost to follow-up." *Id.*, Att. 1, p. 3. Plaintiff claims he was given Risperdal, an anti-psychotic medication, resulting in uncontrolled,

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was notified that the Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 48. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id.*

excessive blinking as well as uncontrolled movement or his mouth, slurred speech, discomfort and disfigurement. *Id*. at Att. 1, p. 8. In administrative remedy procedure complaints (ARPs) filed by Plaintiff he states the medication he was given to control the side effects was discontinued on several occasions when the prescription ran out and sick call slips requesting refills went unanswered. *Id*. at pp. 9—10. Plaintiff states the side effects are painful and worsened without the prescribed medication.

His claim against Dr. Siracusano is that from December 16, 2009 to February 16, 2009, he changed Plaintiff's prescription for Cogentin to Vitamin B6. On June 1, 2009, the vitamin "ran out, and was never reordered." Plaintiff indicates he did not receive any medication until August 21, 2009. ECF No. 10.

Defendants state they provided constitutionally adequate care to Plaintiff for his complaints. ECF No. 46. They provide medical records documenting that Plaintiff is a 62 year old man diagnosed with Schizophrenia. *Id*., Ex. 1. Plaintiff has been asymptomatic for approximately five years. Over the years and during the progression of his illness, Plaintiff has been prescribed various medications for the purposes of treating his disease including Risperdal, Stelazine, Haldan and Geodon. Plaintiff alleges that these medications have caused him to develop Tardive Dyskinesia "TD", a disorder which makes it difficult to control bodily movements. *Id*. The prolonged use of psychoactive medications can result in TD. Dr. Siracusano avers that there is no specific cure for TD. *Id*. However, medical research indicates various possible treatments including changing or discontinuing psychoactive medication. *Id*.

Plaintiff's symptoms of TD--uncontrollable blinking and eye irritation were monitored, evaluated, and efforts were made to treat same. On June 22, 2007 and May 19, 2009, Dr. De La

2

Torre administered the Abnormal Involuntary Movement Scale ("AIMS") to Plaintiff to identify the severity of his involuntarily movements. The June 22, 2007 examination classified Plaintiff's symptoms as minimal to mild. *Id.*, Ex. 3-3a. Plaintiff was prescribed Cogentin, a non-psychoactive medication used to treat the symptoms of tremors or other extrapyramidal side effects caused by psychoactive drugs and a follow-up appointment was requested by Dr. De La Torre. *Id.*, Ex. 3a-3b.

For unknown reasons Plaintiff was not brought in for the requested follow up appointment in the time requested. The second assessment on May 19, 2008, classified Plaintiff's symptoms as none to moderate. *Id.*, Ex. 4-4a. At that time Dr. De La Torre noted that Plaintiff was "lost to follow up." He further noted that in spite of not being on any psychotropic his AIMS Score had increased. Dr. De La Torre reordered the Cogentin. *Id.*, Ex. 4c. On June 22, 2008, Dr. De La Torre again saw Plaintiff and learned Plaintiff had not received the prescribed medication. Dr. De La Torre again charted his order for the medication with a note that he had spoken with the nurse about Plaintiff's being prescribed Cogentin. *Id.*, Ex. 5. He noted that Plaintiff's AIMS score remained unchanged and directed he be seen for follow up a month later. *Id.*

On July 21, 2008, Dr. Siracusano first evaluated Plaintiff. He noted Plaintiff's TD symptoms were stable. *Id.*, Ex. 6. Plaintiff advised Dr. Siracusano he had been off psychoactive medications and then placed on Risperdal which triggered the TD symptoms. Plaintiff reported that Cogentin was not beneficial in controlling the symptoms. Dr. Siracusano ordered Plaintiff return in one to two weeks so that they could discuss further treatment options

3

including the use of Vitamin B6. Dr. Siracusano avers that he needed to investigate the possible benefits of Vitamin B6 as a treatment option. *Id.*, Ex. 1 & 6.

Dr. Siracusano avers that Vitamin B6 has been shown to be beneficial in the treatment of TD. *Id.* Dr. Siracusano met with Plaintiff on July 28, 2008, and discussed the use of Vitamin B6 as a treatment plan. Plaintiff agreed and Dr. Siracusano ordered Plaintiff be further evaluated by him in four weeks. *Id.*, Ex. 6a. However, Plaintiff was not returned to Dr. Siracusano until December 16, 2008. At that time, Plaintiff reported his symptoms of TD had progressed. Plaintiff again agreed to a treatment plan including a 1200 mg dosage of Vitamin B6. The prescription was to last until February 16, 2009. Dr. Siracusano directed Plaintiff be seen for follow up in two weeks, however, Plaintiff was not seen again by Dr. Siracusano until March 5, 2009. At that time Dr. Siracusano renewed the B6 prescription from March 5, 2009 until June 5, 2009. *Id.*, Exs. 1, 7 & 8.

On August 19, 2009, Plaintiff advised Dr. Siracusano that his symptoms of schizophrenia had been stable, but the TD symptoms remained. Plaintiff advised Dr. Siracusano that the B6 was helpful although he was having difficulty retrieving the medication because he believed it was given to other inmates or the pharmacy did not keep enough in stock. He also stated he was questioned repeatedly by pharmacy staff regarding the quantity of his prescription. *Id.*, Exs. 1 & 9-9b.

On November 9, 2009, Plaintiff reported to Dr. Siracusano that he continued having difficulty retrieving his medication from the pharmacy. The doctor noted Plaintiff's TD appeared "better" and the medications were continued. Plaintiff was directed to return for follow up in 12 weeks. *Id.*, Exs. 1 & 10. At Plaintiff's next evaluation with Dr. Siracusano, on February 1,

2010, he reported he did not find Vitamin B6 helpful and asked to stop taking the medication. Dr. Siracusano discontinued the prescription and directed Plaintiff to follow up with the psychiatric department as needed. *Id.* Ex. 1 & 11.

Defendant Siracusano further avers that at the time Defendants provided treatment to Plaintiff, Mental Health Management Services Inc., ("MHM") was their employer. MHM did not employ the administrative staff responsible for scheduling follow-up appointments requested by MHM physicians. Follow up appointments which were requested by Defendants but not scheduled were simply not within their control. *Id.*, Ex. 1. Defendants could only request to see a given patient, once the request was made, it was up to administrative staff to follow through with scheduling the appointments. *Id.* Similarly, administrative staff were responsible for informing Defendants that an inmate had filed a request seeking to be seen by them. Defendants aver they were not aware of any such request being made by Plaintiff. When Dr. Siracusano became aware Plaintiff had not been regularly seen for follow-up he noted same in the chart.[2] *Id.*

Similarly, Defendant Siracusano avers that Plaintiff's complaint that he did not receive prescribed medication does not lie with the named Defendants. Defendants and their employer are separate from the pharmaceutical staff responsible for administering drugs within the prison system. *Id.* Defendants had no authority over the actual dispensing of medication to Plaintiff. Nor did they receive an accounting from pharmacy staff as to the availability of a particular drug. Further, notice is not given to MHM physicians once a patient receives the medication prescribed. Dr. Siracusano never received notice from the pharmacy staff that Vitamin B6 was

---

[2] Dr. Siracusano avers that approximately a year and a half ago MHM began to employ its own support staff to ensure that doctors and administrative assistants work more closely in order to facilitate the goal of efficient treatment and timing of follow up appointments. *Id.*, Ex. 1.

unavailable or in limited supply. Nor was Dr. De La Torre made aware that Plaintiff did not receive the Cogentin prescribed. *Id.*, Exs. 1 and 5.

Medical records further demonstrate that Plaintiff has not always been compliant in taking medication prescribed, missing numerous doses of prescribed medication due to his failure to report for pill call. ECF No. 27, Ex. A.

### Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing

summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There is no essential distinction between the right to medical care for physical ailment and the right to psychiatric or psychological care for mental ailments. *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). Plaintiff, as an incarcerated person, "is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be

substantial." *Id.*, at 47–48. The *Bowring* court further concluded that the right to such treatment is based upon the essential test of medical necessity and not upon a belief is that care is merely desirable. *Id.* at 48. "Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's allegations that he was not provided necessary medical treatment for the TD which he developed due to the use of psychoactive medications is belied by the medical records. There is no known cure for TD however in an effort to ameliorate Plaintiff's TD symptoms, his psychoactive medications were discontinued and he was prescribed Cogentin and later Vitamin B6. Plaintiff's symptoms were described as mild to moderate and were relatively stable throughout his treatment.

There is no dispute that there was a nearly year-long delay at the outset in the treatment of the TD due to an unexplained failure to reschedule Plaintiff for follow-up care. There also is no dispute that at various times Plaintiff did not receive medication prescribed to treat his TD symptoms. Those errors, however, were not occasioned by the actions or inactions of the named Defendants. Defendants evaluated Plaintiff and prescribed appropriate medication and a follow-up regimen. Neither named Defendant was responsible for scheduling the follow up treatment or seeing that the prescribed medications were actually dispensed. Any failure on the part of Defendants in overseeing their patient case load in order to ascertain that Plaintiff was not returned for ordered follow up care cannot be described as deliberate but rather was a result of Defendants' voluminous case load and the division of responsibilities between MHM employees and clerical staff. *See* ECF No. 46, Ex. 1 (caseload of approximately 600 patients; MHM

employees not responsible for scheduling follow-up care). The actions complained of in regard to delay in follow up care and failure to provide prescribed medication, in so far as they are charged against the named Defendants, arise to nothing more than negligence claims. "[A]n inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Plaintiff's claim that Vitamin B6 is ineffective to treat TD amounts to nothing more than a disagreement with the course of treatment prescribed and does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. Accordingly, the Defendants are entitled to summary judgment as to the Plaintiff's Eighth Amendment claim.

A separate Order shall be entered granting the pending dispositive motions and closing these consolidated cases.

April 19, 2012
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE